# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALVIN J. LEAVY, JR., | CV F 05-00314 AWI SMS HC |
| Petitioner, | FINDINGS AND RECOMMENDATIONS REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| R. KIRKLAND, | [Doc. 1] |
| Respondents. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND

On July 15, 2002, the District Attorney of Fresno County filed an information in the Superior Court challenging Petitioner with the following, committed on or about April 12, 2002:

> 1. Murder of Alfonso Lee Woods (Cal. Pen. Code § 187)[1] in the attempted commission of robbery (§ 190.2, subd. (a)(17)), in which the [Petitioner] intentionally discharged a firearm causing great bodily injury or death (§ 12022.53, subd. (d));
> 2. Attempted robbery (§§ 211, 664) in which he intentionally discharged a firearm causing great bodily injury or death (§ 12022.53, subd. (d)); and
> 3. Possession of a firearm by a felon (§ 12021).

The information also alleged five prior serious felony convictions in two separate cases: four convictions of robbery and one of assault with a deadly weapon. (§§ 667, subd. (b)-(I),

---

[1] All further statutory references are to the California Penal Code unless otherwise indicated.

1

1  1170.12; CT 108-111.)[2]

2  On October 2, 2002, the jury found Petitioner guilty on all the charges and found the special allegations to be true. (CT 326-336.) Petitioner admitted the prior serious felony convictions. (CT 136; RT 1109-1111.)

On December 20, 2002, the court sentenced Petitioner on the murder count to life in prison without the possibility of parole, plus 25 years for the gun enhancement. The court stayed the sentence for attempted robbery under section 654. The court sentenced Petitioner to a consecutive third-strike term of 25 years to life for being an ex-felon with a gun. In addition, the court imposed two five-year terms for the two separate prior serious felony convictions. (CT 333-335; RT 1131-1133.)

Petitioner filed an appeal to the Court of Appeal for the Fifth Appellate District. On February 5, 2004, the Court affirmed the conviction.

Petitioner filed a petition for review in the California Supreme Court, which was denied on April 14, 2004.

Petitioner did not file any post-conviction habeas corpus petitions in state court. (Cf. Pet. at 3.)

## STATEMENT OF FACTS[3]

On April 12, 2002, the victim, Alfonso Woods, Bobby Wilson, Richard Baldwin, Russel Williams, and Hakim Haqq, and several other men were behind the bathrooms at a public park. Some of the men were playing dice. [Petitioner] approached the group and asked for a cigarette and five dollars. [Petitioner] focused his request on Woods, who was counting money at the time. Williams heard Woods tell [Petitioner] "I [don't] have five dollars to give you." At that point, [Petitioner] lifted his shirt and pulled a gun from his waistband. According to Williams, [Petitioner] said something to the effect "Man, if I want your money, you know, I could take it. . . . Can I have five dollars?" Haqq recalled [Petitioner] saying "Let me get five bucks. Or not, I'm going to take all of it."

After [Petitioner] pulled the firearm and began waiving it around, Baldwin saw Woods push the gun away and say "[p]ut that away." At that point [Petitioner] and Woods struggled over the gun and it discharged toward the ground, causing a grazing wound to the victim's foot. After the gun went off,

---

[2] The information also alleged prior prison terms, but the allegations were dismissed on the District Attorney's motion after the jury retired to deliberate. (RT 1109.)

[3] The Court finds the Court of Appeal correctly summarized the facts in its February 5, 2004 opinion. Thus, the Court adopts the factual recitations set forth by the California Court of Appeal, Fifth Appellate District.

> Woods fled and [Petitioner] followed, firing his gun several times. One of the shots struck Woods in the back as he was running across the street. Woods managed to make it across the street to a funeral home before he collapsed. Woods died from the gunshot wound.
>
> Four eyewitnesses, Wilson, Baldwin, Williams and Haqq, identified [Petitioner] as the shooter. Williams, who had known [Petitioner] for approximately 20 years prior to the incident, made an in-court identification of [Petitioner] and selected him from a photographic lineup. The remainder of the eyewitnesses had never seen [Petitioner] before this incident. Wilson made an in-court identification of [Petitioner] and both Baldwin and Haqq selected [Petitioner] from a photographic lineup in addition to making in-court identifications of [Petitioner].
>
> Defense Case
>
> [Petitioner's] cousin, Irene Anderson, testified that Williams told her he was not present at the time of the shooting. [Petitioner] focused on inconsistencies in the eyewitness accounts of the incident and claimed the witnesses were mistaken in their identification of [Petitioner].

(CITE.)

## DISCUSSION

A.    Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Fresno County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

3

B.      Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations omitted). "Rather, that application must be objectively unreasonable." Id. (citations omitted).

While habeas corpus relief is an important instrument to assure that individuals are constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392 (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal conviction is the primary method for a petitioner to challenge that conviction. Brecht v. Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993). In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day, 110 F.3d 1380, 1388 (9th Cir. 1997).

C.      Grounds One and Two: Trial Court Erred in Failing to Sua Sponte Give Instruction

Defining the Offenses and Special Circumstance

In Grounds One and Two of the petition, Petitioner contends that the trial court erred in failing to sua sponte instruct the jury that the murder be for the purpose of carrying out or advancing the commission of the robbery. Specifically, in his traverse, Petitioner contends that the trial court failed to give CALJIC No. 8.81.17, which states:

> To find the special circumstance referred to in these instructions as murder in the commission of _____ is true, it must be proved:
> [1a.] [The murder was committed while [the] [a] defendant was [engaged in] [or] [was an accomplice] in the [commission] [or] [attempted commission] of a _____;] [or] [and]
> [1b.] [The murder was committed during the immediate flight after the [commission] [attempted commission] of a _____ [by a defendant] [to which [the] [a] defendant was an accomplice][.] [; and]
> [2. The murder was committed in order to carry out or advance the commission of the crime _____ or to facilitate the escape therefrom or to avoid detention. In other words, the special circumstance referred to in these instructions is not established if the [attempted] _____ was merely incidental to the commission of the murder.]

Petitioner further contends that because the murder and attempted robbery were disconnected, the jury should have been instructed on the incidental robbery theory enunciated in People v. Green, 27 Cal.3d 1 (1980).

A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in a federal habeas corpus action. See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. See id. at 72. Additionally, the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Id. The court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. See United States v. Frady, 456 U.S. 152, 169 (1982) (citing Henderson v. Kibbe, 431 U.S. 145, 154 (1977)). Furthermore, even if it is determined that the instruction violated the petitioner's right to due process, a petitioner can only obtain relief if the unconstitutional instruction had a substantial influence on the conviction and thereby resulted in actual prejudice under Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710

(1993) (whether the error had a substantial and injurious effect or influence in determining the jury's verdict.). See Hanna v. Riveland, 87 F.3d 1034, 1039 (9th Cir. 1996). The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." Id.

In the instant case, Petitioner was charged in the Information with the felony-murder (robbery) special circumstance under § 190.2(a)(17). (CT 108-109.)

In rejecting Petitioner's claim on direct appeal, the state Court of Appeal, after a discussion of the applicable state law held:

> . . . the record does not demonstrate a *sua sponte* obligation to instruct with CALJIC No. 8.81.17. There was no evidence that [Petitioner's] attempted robbery of the victim was incidental to the murder. No evidence established that [Petitioner] knew the victim prior to the crime, harbored any animus toward him, or had the primary goal of murdering him. Rather, the evidence demonstrated that [Petitioner's] primary goal was to rob the victim and, when the victim would not comply with the robbery, [Petitioner] killed him. This is demonstrated from the fact that [Petitioner] approached the victim, asked him for money, displayed a gun when the victim refused to give him money, struggled with the victim, and chased after the fleeing victim and shot him in the back. Even [Petitioner] argues the reason for the murder was the victim's noncompliance with the robbery. Therefore, the murder cannot be considered to have been incidental to the robbery. Thus, an instruction pursuant to CALJIC No. 8.81.17 was not required.

(Opinion, at 7.)

In a very recent Ninth Circuit opinion, the Court of Appeals explained the California Supreme's Court holding in People v. Green, 27 Cal.3d 1. In Clark v. Brown, 450 F.3d 898 (9th Cir. 2006), the Ninth Circuit stated:

> In *People v. Green*, 27 Cal.3d 1, 61, 164 Cal.Rptr. 1, 609 P.2d 468 (1980), the California Supreme Court narrowed the felony-murder special circumstance statute in order to comply with the requirement of *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), and *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), that "each special circumstance provide a rational basis for distinguishing between those murderers who deserve to be considered for the death penalty and those who do not." *See also Williams v. Calderon*, 52 F.3d 1465, 1476 (9th Cir. 1995) (explaining that Green's narrowing construction was added "out of constitutional necessity, not mere state law nicety," for the special circumstance would otherwise "run afoul of the requirements of *Furman* and *Gregg*).

Clark, at 905. The Ninth Circuit further explained that in Green, the California Supreme Court

determined that the felony-murder special circumstance statute allowed the death penalty to be imposed on defendants who killed in order to advance an independent felonious purpose. However, there is no independent felonious purpose if the felony is "incidental" to the murder. Id. at 905-906.

In Clark, the defendant was charged with one count of first degree murder (David Gawronski), two counts of attempted first degree murder (Ava and Sara Gawronski), and arson. The state also charged two special circumstances that made Clark death eligible: murder by means of an explosive and murder in the commission of a felony (arson). At trial, defendant's primary defense was that the arson was incidental to the killing of David Gawronski and therefore Clark could not be guilty under the felony-murder special circumstance. Over defense counsel's objection, the trial court rejected the request that the jury be instructed with CALJIC 8.81.17. Clark was convicted of first degree murder (David Gawronski), two counts of second degree murder (Ava and Sara Gawronski), and arson. The jury also found true both the special circumstances, and Petitioner was sentenced to death.

On direct appeal, the California Supreme Court, upheld the conviction stating in part that the "arson was not simply incidental to the intended murder of David Gawronski, which was to be committed by another means independent of the arson. The relation between defendant's intent to murder David Gawronski, and his intent to burn the Gawronski home, would not invoke the Green rule since defendant had independent, albeit concurrent, goals." Clark, at 909.

The Ninth Circuit disagreed holding that Clark did not have an "independent felonious purpose" in committing the arson. Clark conceded that he had set fire to the house and that he did, in fact, intend to kill David Gawronski. However, Clark set the fires merely in an attempt to get David Gawronski out of the house so that he could shoot him in front of his wife Ava. Clark, at 908. The prosecution's theory of the case was that Clark intended that the fires kill the entire family in the house. Id. at 910. Thus, "[t]here was never any contention- -by either the prosecutor or Clark- -that Clark murdered David Gawronski in order to advance his purpose of

committing arson." Id. at 911.[4]

Clark and Green are factually distinguishable from the instant case. Here, Petitioner's primary goal was to rob and not kill the victim. As stated by the Court of Appeal, the evidence clearly demonstrates that Petitioner had an independent felonious intent to commit the robbery and he committed the murder because the victim did not comply with his robbery attempts; thus, the attempted robbery cannot be considered merely incidental to the murder. As such, the trial court did not error in failing to instruct, sua sponte, on the incidental robbery theory. The state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

D.  Grounds Three and Four: Trial Court Erred in Imposing Multiple Punishments for Multiple Offenses Committed in the Same Incident

In Grounds Three and Four of the Petition, Petitioner contends that he could not be punished separately "for illegal possession of [a] gun moments before" the attempted robbery and murder. (Pet. at 6.)

Respondent argues, in the state court, Petitioner relied exclusively on the multiple-punishment bar of section 654. To the extent Petitioner contends that the state court erred in its interpretation or application of Section 654, the claims presents only a question of law and is not cognizable via § 2254. See Watts v. Bonneville, 879 F.2d 685, 687 (9th Cir. 1989) (alleged violation of section 654 is state law claim not cognizable in federal habeas under § 2254.) Habeas corpus relief is not available to correct alleged errors in the state court's application or interpretation of state law. Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480 (1991); Middleton v. Cupp, 768 F.2d 1083, 1084-85 (9th Cir.1985). However, state laws guaranteeing an individual certain rights may create a liberty interest protected against arbitrary deprivation by the due process clause of the fourteenth amendment. Hicks v. Oklahoma, 447 U.S. 343, 346 9100

---

[4] The Ninth Circuit also held that the California Supreme Court had created and applied a new interpretation of the felony-murder special circumstance, thereby violating Clark's right to due process. Specifically, the Court held that the Supreme Court had significantly changed the first requirement under Green "by expanding the definition of an 'independent' purpose to include a concurrent purpose and dispensed with the second requirement that the murder have the purpose of advancing the "independent felonious purpose" of the arson." Clark, at 911.

8

S.Ct. 2227 (1980) (when a state has provided a specific method for determining whether a certain sentence shall be imposed it cannot be said that defendants interest in having that method adhered to is 'merely a matter of state law.' *citing* Fetterly v. Paskett, 997 F.2d 1295, 1300 (9th Cir. 1993), *cert. denied*, 513 U.S. 914, 115 S.Ct. 290 (1994)).

To the extent Petitioner's claim can liberally be construed as a due process challenge, it is without merit. California Penal Code section 654, subdivision (a), states:

> An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other.

The Court of Appeal, rejected Petitioner's interpretation of California law on this point. Specifically, the Court stated in relevant part:

> 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' [Citations.] [¶] Whether there was more than one intent or objective is a question of fact for the trial court and will be upheld if there is substantial evidence to support it. Where, as here, the trial court does not make an express finding, an implied finding that the crimes were divisible inhere in the judgment and must be upheld if supported by the evidence.[5] . . .
> The record reflects that [Petitioner] approached the group with a loaded gun. 'Commission of a crime under section 12021 is complete once the intent to possess is perfected by possession.' [Citations.] [Petitioner's] intent to possess to [sic] the gun thus was separate and distinct from his additional intent to kill the victim by firing the gun multiple times in his direction. [Citation.] [¶] In view of the above, we conclude there was substantial evidence to support the trial court's finding that [Petitioner] entertained separate intents and objectives in committing the crimes of murder, attempted robbery, and possession of a firearm by a felon. Accordingly, [Petitioner's] sentence was proper.

(Opinion, at 10-14.)

The Court of Appeal's interpretation of California law is binding on this Court. Hicks v. Feiock, 485 U.S. 624, 629 (1988); see also Estelle v. McGuire, 502 U.S. 62, 71-72 (1991) (holding challenge to jury instruction based solely on error under state law does not state claim cognizable in federal habeas corpus proceedings).

---

[5] The trial court noted during sentencing that count 3 'is predominantly independent of Counts One and Two in that the weapon was possessed by the defendant prior to the commission of the acts in Count[s] One and Two,' but never made any findings regarding whether count 3 involved a separate intent and objective.

In his traverse, Petitioner argues that his rights under the Eighth and Fourteenth Amendments have been violated. Specifically, Petitioner contends that under the <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) doctrine the jury should have decided whether Petitioner's intent and objective for possessing a gun was separate from his intent and objective in committing the main crimes. This claim was exhausted as it was presented in the petition for review filed in the California Supreme Court. (<u>See</u> Petition for Review, dated 3/9/04.)

In rejecting Petitioner's <u>Apprendi</u> claim on direct appeal, the Court of Appeal stated:

> In *Apprendi*, the court considered whether the defendant's due process rights were violated by a New Jersey statute that permitted a trial court to increase punishment beyond the statutory range for an offense if it found by a preponderance of the evidence that defendant's offense was a "hate" crime. *Apprendi* held that defendant was entitled to a jury determination whether his offense of possession of a firearm was a hate crime for purposes of sentence enhancement. [Citation.] The *Apprendi* court ruled, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." [Citation.]
>
> *Apprendi* has no application to a factual determination under section 654. As the court in *Cleveland* stated:
>
>> "Unlike in the 'hate crime' provision in *Apprendi*, section 654 is not a sentencing 'enhancement.' On the contrary, it is a sentencing 'reduction' statute. Section 654 is not a mandate of constitutional law. Instead, it is a discretionary benefit provided by the Legislature to apply in those limited situations where one's culpability is less than the statutory penalty for one's crimes. Thus, when section 654 is found to apply, it effectively 'reduces' the total sentence otherwise authorized by the jury's verdict. The rule of *Apprendi*, however, only applies where the nonjury factual determination *increases* the maximum penalty beyond the statutory range authorized by the jury's verdict. In *Apprendi*, the factual determination (i.e., the element of intent for the hate crime) which increased his sentence was not determined by the trier of fact under the reasonable doubt standard.... [¶] ... Section 654 does not contain the 'maximum penalty' for any particular crime. The 'maximum penalty' discussed in *Apprendi* is relevant only where a judge-made factual determination increases the maximum statutory penalty for the particular crime or crimes.... [¶] ... The court's finding under section 654 does not create a 'new' offense. Instead, it gives effect to the jury's verdicts on offenses for which the defendant has been fully tried and convicted." (*Cleveland*, supra, 87 Cal.App.4th at pp. 270-271.)
>
> We find the analysis of the majority opinion in *Cleveland* persuasive. [Citation.] A factual determination under section 654 is for the trial court, not the jury, and *Apprendi* has no application.

(Opinion, at 14-15.)

For the same reasons stated by the Court of Appeal, Petitioner's Apprendi claim is without merit, as section 654 does not create a new offense or provide the maximum penalty, rather, the Court merely gives effect to the jury's factual finding on the offenses of which he was convicted. Further, as previously stated, the evidence amply supports the trial court's implicit and the Court of Appeal's explicit finding that Petitioner's intent to possess the gun was separate and distinct from the additional intent to kill or rob the victim, as Petitioner already had the gun on his person when he approached the group.[6]

Any alleged challenge under the double jeopardy clause, also fails on the merits. As Respondent correctly argues, federal law does not bar multiple punishment for multiple crimes committed in a single incident. The Double Jeopardy Clause of the Fifth Amendment of the Constitution states that: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V; see also United States v. Ursery, 518 U.S. 267, 116 S.Ct. 2135, 2139 (1996). The Double Jeopardy Clause protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. Schiro v. Farley, 510 U.S. 222, 229, 114 S.Ct. 783, 789 (1994); North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076 (1969), overruled on other grounds by Alabama v. Smith, 490 U.S. 794, 109 S.Ct. 2201 (1989).

The constitutional protection against multiple punishment ensures that sentencing discretion is limited to the boundaries set by the legislature. Garrett v. United States, 471 U.S.

---

[6] The Court notes that in People v. Black, 35 Cal.4th 1238 (2005), issued after the California Supreme Court's denial in the instant case, the California Supreme Court, among other things, held that there is no right under Blakely to a jury trial on any facts that support the trial court's decision to impose consecutive terms. The Court noted that "[f]or purposes of the right to a jury trial, the decision whether section 654 requires that a term be stayed is analogous to the decision whether to sentence concurrently. Both are sentencing decisions made by the judge after the jury has made the factual findings necessary to subject the defendant to the statutory maximum sentence on each offense, and neither implicates the defendant's right to a jury trial on facts that are the functional equivalent of elements of an offense." Id. at 1264. A petition for writ of certiorari was filed on September 28, 2005, and is pending before the United States Supreme Court, Case No. 05-6793. In light of the lack of *clearly established* law establishing that a sentence under section 654 entitles Petitioner to a jury trial on the facts that supports the trial judge's decision, the Court cannot find that the state courts' determination of this issue was contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

773, 793 (1985); Ohio v. Johnson, 467 U.S. 493, 499 (1984); Brown v. Ohio, 432 U.S. 161, 165 (1977). For purposes of federal review, the test established in Blockburger v. United States, 284 U.S. 299, 304 (1932), generally determines whether a defendant has been punished twice for the "same offense." See Rutledge v. United States, 517 U.S. 292, 297 (1996); Ohio v. Johnson, 467 U.S. at 499 n.8. If "the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Blockburger, 284 U.S. at 304. The legislative intent determines the question of multiple punishment. Missouri v. Hunter, 459 U.S. 359, 366-68 (1983). Thus, even if the two crimes are the same under Blockburger, a federal court's inquiry is at an end if it is evidence that the legislature intended to authorize cumulative punishments. See Johnson, 467 U.S. at 499 n.8; Hunter, 459 U.S. at 369; United States v. Martinez, 49 F.3d 1398, 1402 n.6 (9th Cir. 1995), cert denied 516 U.S. 1065 (1996), superseded by statute on other grounds in U.S. v. Randolph, 93 F.3d 656 (9th Cir. 1996); accord United States v. Wolfswinkel, 44 F.3d 782, 784 (9th Cir. 1995) ("If Congress enacts statutes that indicate an intent to impose separate punishments, those statutes define separate offenses, and the punishments do not violate the Constitution.")

In addition, in Monge v. California, 524 U.S. 721, 724 (1998), the Supreme Court clearly held that the Double Jeopardy Clause does not apply to noncapital sentencing proceedings.

To the extent Petitioner's claim can be interpreted as a violation of the Double Jeopardy bar against multiple punishments for the same offense, his claim is negated by the Court of Appeal's factual finding that Petitioner's intent and objective in possessing the gun were independent of the attempted robbery and murder. Thus, Petitioner was convicted and sentenced for violating separate statutory provisions (California Penal Code sections 187, 211, 12021) based on separate acts with separate criminal objectives and intent. The state courts' determination is not based on an unreasonable determination of the facts, 28 U.S.C. § 2254(d)(2), or contrary to federal law, 28 U.S.C. § 2254(d)(1). As such, Petitioner fails to state a Double Jeopardy violation.

RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and

2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendations is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:** **December 6, 2006**        /s/ Sandra M. Snyder
icido3                                 UNITED STATES MAGISTRATE JUDGE